IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>**40 Litchfield Lane East, Martinsburg, West Virginia, as further described in Attachment A** | Case No. 3:19mj7<br><br>UNDER SEAL |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, **Ellen Duffy**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 21 U.S.C. § 841(a).

2. I was hired by the FBI as a Special Agent in January 2018. I attended the FBI's training academy in Quantico, Virginia, where I received instruction regarding drug trafficking, money laundering, and violent gang investigations. I graduated from the FBI training academy as a Special Agent in May 2018. I am currently assigned to the Pittsburgh Division, Martinsburg, West Virginia Resident Agency of the FBI.

3. Prior to my employment with the FBI, I was employed with the University of Florida Police Department (UFPD) for approximately seven years. During my employment with UFPD, I served as a uniformed Patrol Officer, a Detective, and a Detective Sergeant. To qualify for this employment, I completed the Florida Department of Law Enforcement's Basic Field Training Course in October 2010. Prior to my employment with UFPD, I was employed as a

Special Agent with the United States Department of Education, Office of Inspector General for approximately two years. For that position, I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in April 2008.

4. I have been serving on the Eastern Panhandle Drug and Violent Crimes Task Force (EPD&VCTF) since my graduation from the FBI training academy in May 2018. My current assignment requires knowledge of matters related to illegal drug trafficking and violent gang activity in the Eastern Panhandle of West Virginia.

5. As part of my duties as a Special Agent, I investigate criminal activity related to drug trafficking, in violation of 21 U.S.C. § 841(a)(1). My experience includes, but is not limited to, conducting surveillance, conducting database checks, analyzing telephone records, writing affidavits for search warrants, and working with informants. I am familiar with matters including, but not limited to, the means and methods used by drug trafficking organizations to purchase, transport, store, and distribute drugs, and the concealing of profits generated from those transactions. I know that it is common practice for drug traffickers to routinely utilize telephones, mobile phones, prepaid phones, calling cards, text messaging, counter-surveillance, false or fictitious identities, and coded communications to communicate with their customers, suppliers, and others for the purpose of insulating themselves from the detection of law enforcement. Moreover, it is not unusual for them to initiate such mobile or prepaid phone service in the name of an associate or family member or in the name of a fictitious individual.

6. Based upon my training, experience and duties as a Special Agent I know that that drug traffickers commonly have in their possession, that is on their person; at their residences and/or businesses; and vehicles: firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. These firearms are used to protect

and secure a drug trafficker's property. Such property may include, however, is not limited to: drugs, records, proceeds and profits derived from drug trafficking. These firearms are also used to prevent the theft of controlled substances and to protect dealers from law enforcement officers effecting a seizure and arrest. In addition drug traffickers also utilize firearms to intimidate persons who owe money for controlled substances provided on consignment.

7. I have obtained the information contained in this affidavit from my personal participation in the investigation, and from reviewing information obtained through legal process, such as telephone records, telephone communications and associated data, as well as information obtained through law enforcement and commercial databases. In addition, I have discussed this case with, and have reviewed the reports of, other law enforcement officers who have been involved in this investigation. I have also reviewed information provided by informants who are familiar with the investigative subjects.

8. I have not included each and every fact known to me concerning the underlying investigation as the sole purpose of this affidavit is to establish the required foundation for the requested search warrant. I have set forth only the facts that I believe are essential to establish this required foundation. Facts not set forth herein are not being relied upon in reaching my conclusion that an order should be issued. I do not request that this Court rely upon any facts not set forth herein in reviewing this affidavit or accompanying application.

## PROBABLE CAUSE

### Background

9. I have participated in an ongoing investigation into the criminal activities of a drug trafficking organization referred to by investigators as the TRIPLE CROWN CREW (TCC). Identified members of the TCC include, but are not limited to, GREGORY POLK

(hereinafter referred to as "POLK"), LEROY GRIFFIN (hereinafter referred to as "GRIFFIN"), MICHAEL PAYTON (hereinafter referred to as "PAYTON"), JESSCIA NICHOLSON (hereinafter referred to as "NICHOLSON"), and JASON BRYANT (hereinafter referred to as "BRYANT"). POLK is the known user of (314) 326-0887 (hereinafter referred to as TT7), and GRIFFIN is the known user of (267) 505-8270 (hereinafter referred to as TT11). PAYTON is the subscriber and known user of (304) 901-6942 (hereinafter referred to as CP18). The investigation has revealed that GRIFFIN and POLK traffic heroin, cocaine, and marijuana from the Eastern District of Pennsylvania, to the Northern District of West Virginia and the District of Maryland in violation of 21 U.S.C. § 841(a)(1). POLK and GRIFFIN use redistributors to include the NICHOLSON, PAYTON, and BRYANT.

10. This affidavit is submitted in support of an application for a search warrant for the premises described in Attachment A, 40 Litchfield Lane East, a residence in Martinsburg, Berkeley County, West Virginia (hereinafter referred to as the "target location"). There is probable cause to believe the TCC is utilizing the target location to facilitate drug transactions and aid in their drug trafficking organization's business in and around Berkeley County and Jefferson County, West Virginia. Furthermore, the residence is believed to be used to store, maintain, and conceal illegal narcotics and large amounts of United States Currency as well as the items listed in Attachment B, which are evidence of drug trafficking.

<u>Northern District of West Virginia Title III Wiretap Authorizations</u>

11. On September 17, 2018, Chief United States District Judge Gina Groh authorized interception of TT7 filed at Northern District of West Virginia case number 3:18MC103. Interception of TT7 began on September 17, 2018 and terminated on October 17, 2018.

12. On November 20, 2018, United States District Judge Thomas Kleeh authorized interception of TT11, filed at Northern District of West Virginia case number 3:18MJ109. Interception began on November 20, 2018, and is scheduled to terminate on December 20, 2018.

Northern District of West Virginia Pen Register and Trap and Trace Authorizations

13. On September 6, 2018, a U.S. Magistrate Judge in the Northern District of West Virginia authorized a pen register and trap and trace (3:18MC102) for TT7.

14. On September 19, 2018, a U.S. Magistrate Judge in the Northern District of West Virginia authorized a pen register and trap and trace (3:18MC105) for TT11.

Facts and Circumstances

15. A review of the telephone records obtained via the above-listed Title III interceptions and Pen registers and trap and traces, indicates that POLK and GRIFFIN regularly communicate with NICHOLSON, PAYTON, and BRYANT.

16. On November 13, 2018, EPD&VCTF surveillance officers conducted physical surveillance of GRIFFIN as he was determined to have traveled from Philadelphia, Pennsylvania, to an area in or around the District of Maryland, and then to the Northern District of West Virginia. GRIFFIN was observed operating a white Chevrolet Impala sedan bearing West Virginia license plate 42S305 in Charles Town, West Virginia. A short time later, GRIFFIN's vehicle was observed parked in front of the target location. It should be noted that the target location is located approximately 300 feet from PAYTON's residence, 196 Dunrobin Drive, Martinsburg, West Virginia. Subsequent to GRIFFIN traveling to the target location, PAYTON was observed exiting PAYTON's residence and walking in the direction of Litchfield Lane. Surveillance officers were not able to establish a position that offered a vantage point to

observe PAYTON meeting with GRIFFIN. GRIFFIN was observed driving his Impala away from Litchfield Lane.

17.     On November 20, 2018, EPD&VCTF investigators conducted physical surveillance in Martinsburg, West Virginia near Dunrobin Drive. At approximately 2015 hours, a black Dodge Ram 1500 pick-up truck bearing Pennsylvania license plate ZLR7704, registered to POLK, was observed parked in front of the target location. At approximately 2020 hours, a gray Toyota Corolla bearing West Virginia license plate 7WV939 was observed turning onto Litchfield Lane East from Dunrobin Drive. The Corolla parked next to POLK's aforementioned truck. The driver of the Corolla was observed exiting the vehicle and entering the target location. At approximately 2025 hours, the same driver exited the target location carrying a foil-covered package and entering the Corolla. At approximately 2030 hours, POLK was observed exiting the target location, entering his truck and driving away from the target location. POLK was loosely surveilled and ultimately observed at approximately 2056 hours, parking at an apartment complex located on Megan Street, Martinsburg, West Virginia. At approximately 2110 hours, POLK was observed exiting apartment #11 on Megan Street and entering his pick-up truck. POLK then drove away from the residence and surveillance was terminated.

18.     On November 26, 2018, EPD&VCTF officers conducted physical surveillance at the target location. At approximately 0800 hours, officers observed a black Chevrolet Tahoe bearing Pennsylvania license plate KHK1166 parked directly in front of the target location. The vehicle is known by law enforcement officers to be registered to GRIFFIN. At approximately 1035 hours, GRIFFIN was observed exiting the target location and walking to the driver side door of the aforementioned Chevrolet Tahoe. GRIFFIN then turned and walked back into the

target location. At approximately 1250 hours, GRIFFIN and an unidentified male exited the target location.

19. On December 3, 2018, EPD&VCTF officers monitoring wire and electronic communications occurring over **TT11** intercepted communications between GRIFFIN (**TT11**) and BRYANT (**CP24**). During the phone call, GRIFFIN and BRYANT made arrangements for NICHOLSON to meet with BRYANT to pick up "that bread thing, that uh vegetables" on GRIFFIN's behalf. Based on my training and experience, I understood GRIFFIN and BRYANT to be talking about illegal drugs. On December 4, 2018, additional calls were intercepted regarding this meeting as it was about to occur. The meeting between NICHOLSON and BRYANT took place at a gas station in Hagerstown, Maryland. EPD&VCTF investigators obtained video surveillance footage from the gas station which captured NICHOLSON's vehicle, a white Chevrolet Impala, pulling into the gas station parking lot, followed shortly thereafter by BRYANT's vehicle, a gray Ford Fusion sedan. The meeting between NICHOLSON and BRYANT occurred in an area outside of the camera's viewing area. However, investigators were able to review surveillance footage from earlier on the same day that positively confirmed BRYANT as the driver of the gray Ford Fusion sedan. Both BRYANT's vehicle and NICHOLSON's vehicle were captured on video leaving the gas station parking lot a few minutes after arriving.

20. On the same date, December 4, 2018, stationary surveillance officers were posted at the target location, where GRIFFIN was known to be staying during his travels to Martinsburg, West Virginia. Approximately one hour after NICHOLSON's vehicle traveled to meet with BRYANT in Hagerstown, the stationary surveillance units at the target location observed NICHOLSON driving the white Chevrolet Impala on Dunrobin Drive toward

Litchfield Lane. Officers positively identified NICHOLSON as the driver of the vehicle and observed her park in front of the target location. After parking the vehicle, a white male exited the target location and walked to NICHOLSON's vehicle where he lifted the hood of the vehicle. Due to the position of NICHOLSON's vehicle, surveillance officers were not able to observe the white male behind the hood of NICHOLSON's vehicle. The white male then shut the hood, walked over to briefly speak with NICHOLSON from the driver's window, and then entered the target location. NICHOLSON then drove away from the residence. The white male was identified as Jonathon Shears, a known associate of GRIFFIN.

21. On December 27, 2018, EPD&VCTF officers monitoring intercepted communications occurring over LEROY GRIFFIN's cellular telephone's 267-505-8270 (TT11) and 847-287-1116 (TT12), intercepted communications with JASON BRYANT (240-203-1080) which indicated BRYANT and GRIFFIN to be engaging in drug distribution activity. Specifically, at approximately 1010 EST, GRIFFIN called BRYANT and recommended that BRYANT "see what it clocks in at" referring to weighing recently acquired narcotics. GRIFFIN then asks BRYANT if he has any "sandwich bags" referring to drug packaging material. BRYANT confirms that he understands GRIFFIN and will bring the bags. At approximately 1148 EST, GRIFFIN calls BRYANT and asks if he wants GRIFFIN to come to BRYANT's residence, known to investigators as 138 Winter Street, Hagerstown, MD. BRYANT advises that he wants GRIFFIN to come to the residence.

22. On December 27, 2018, EPD&VCTF officers monitoring intercepted communications occurring over LEROY GRIFFIN's cellular telephone's 267-505-8270 (TT12) and 847-287-1116 (TT12), intercepted communications with Jessica NICHOLSON (847-287-1116) which indicated GRIFFIN and Jessica NICHOLSON to be engaging in drug distribution

activity. Specifically, at approximately 1338 EST, Jessica NICHOLSON advised that she was getting ready to "pull in" (referring to her arriving at the residence identified as 40 Litchfield Ln., E., Martinsburg, WV) and requested that GRIFFIN meet her outside. Several minutes after intercepting the aforementioned 1338 EST communication, EPD&VCTF surveillance officers observed Jessica NICHOLSON exiting the residence located at 40 Litchfield Lane E., Martinsburg, WV. Jessica NICHOLSON then entered a white Chevy Impala as a front seat passenger. At approximately 1730 EST, EPD&VCTF surveillance officers observed the white Chevy Impala to be parked directly in front of the residence located at 222 Surrey Ct., Martinsburg, WV.

23.     On December 31, 2018, EPD&VCTF officers monitoring intercepted communications occurring over LEROY GRIFFIN's cellular telephone's 267-505-8270 (TT11) and 847-287-1116 (TT12), intercepted communications with JASON BRYANT (240-203-1080) which indicated BRYANT and GRIFFIN to be communicating about drug distribution activity. Specifically, at 0005 EST GRIFFIN asks BRYANT if "Everything OK" indicating that GRIFFIN is preparing to make a trip from Philadelphia, PA to Martinsburg, WV and is inquiring if BRYANT needs to be resupplied with drugs. BRYANT responds that he is "great" and that he is "back." BRYANT is indicating that he still has drugs to sell and that the quality of the drugs are better than the last batch that was supplied by GRIFFIN. GRIFFIN then replies "if you need me call me" indicating that he can make a trip to Hagerstown to resupply BRYANT when he is ready. BRYANT responds "definitely."

24.     On December 31, 2018, EPD&VCTF officers monitoring intercepted communications occurring over LEROY GRIFFIN's cellular telephone's 267-505-8270 (TT12) and 847-287-1116 (TT12), intercepted communications with JESSICA NICHOLSON (847-287-

1116) which indicated GRIFFIN and Jessica NICHOLSON to be engaging in drug distribution activity. Specifically, at 0101 EST, GRIFFIN sent a text message to NICHOLSON advising that he is going to come down to see her in Martinsburg, WV. At approximately 1330 EST GRIFFIN talks to NICHOLSON and asks her if she needs him to bring "extra down" indicating that GRIFFIN was in a position to bring additional heroin with him down to Martinsburg, WV. GRIFFIN further advised NICHOLSON that if "he had the money he (GRIFFIN) could use it." Based on previously intercepted communications, investigators are aware that GRIFFIN is referring to NICHOLSON's father, BRUCE NICHOLSON. Jessica NICHOLSON advises that she believes he (BRUCE) has "one" ($1000) now but that she will call him. Additionally, Jessica NICHOLSON advises that he (BRUCE) is able to sell cocaine for GRIFFIN.

25.    On December 31, 2018 at approximately 1329 EST, EPD&VCTF officers utilizing surveillance equipment and monitoring surveillance video captured near GRIFFIN's residence, 258 Rosemar Street, Philadelphia, PA, observed a Ram pick-up truck bearing Pennsylvania license plate ZLR7704, belonging to GREG POLK, was observed turning onto Rosemar Street, then turning right onto N 2nd Street to ultimately turn into the alley and stop behind 258 Rosemar Street. At approximately 1403 EST, officers observed GRIFFIN exit the residence located at 258 Rosemar Street, turn left and walk toward N 3rd Street and then turn to walk toward the aforementioned alley located behind 258 Rosemar Street. At approximately 1425 EST, officers observed POLK's truck to drive away from the alley area, turn onto Rosemar Street, and drive away from the area. Investigators confirmed POLK to ultimately return and park his vehicle in the parking lot outside of 7901 Henry Avenue, Philadelphia, PA. At approximately 1645 EST, EPD&VCTF officers conducting physical surveillance observed GRIFFIN operating a silver BMW sedan bearing Pennsylvania license plate KKR4402,

approaching a toll booth, exiting off the Pennsylvania Turn-pike to US-11 in Carlisle, PA. GRIFFIN was observed to have an unidentified passenger in the vehicle. Surveillance officers followed GRIFFIN from Carlisle, PA to I-81 South. GRIFFIN traveled on I-81 South through Maryland and into West Virginia. The West Virginia State Police (WVSP) conducted a traffic stop on I-81 near exit 23 in West Virginia and ultimately recovered large, packaged quantity of suspected heroin and cocaine base. Additionally, smaller individual bags of suspected heroin and cocaine base were recovered along with three containers of marijuana. GRIFFIN was determined to be accompanied by his nineteen-year-old son, TYQUIL GRIFFIN. Both vehicle occupants were arrested by the WVSP and charged with possession with intent to distribute narcotics.

## Conclusion

26. Your Affiant believes that the facts and circumstances stated herein establish probable cause that POLK, GRIFFIN, NICHOLSON, BRYANT and PAYTON are engaged in the commission of distribution of, and possession with intent to distribute, drugs, and the search of the target location will result in the acquisition of sufficient relevant evidence of the commission of these offenses.

## Oath

The information in this affidavit is true to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT

*Ellen Duffy*

Ellen D. Duffy
Special Agent, FBI


Subscribed and sworn to before me this 2nd day of January, 2019.

*Robert Trumble*

Robert W. Trumble
United States Magistrate Judge
Northern District of West Virginia